UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN JEROME SCOTT,

        Petitioner,

v.                                    Case No. 3:19-cv-352-MMH-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Kevin Jerome Scott, an inmate of the Florida penal system, initiated this action on March 19, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Scott challenges a 2009 state court (Duval County, Florida) judgment of conviction for first degree murder, attempted armed robbery, and aggravated battery. He raises four claims. See Petition at 7-18. Respondents have submitted a

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

memorandum in opposition to the Petition. <u>See</u> Answer to Petition for Writ of Habeas Corpus (Response; Doc. 22). They also submitted exhibits. <u>See</u> Docs. 22-1 through 22-4. Scott has neither replied nor requested additional time to file a reply. This action is ripe for review.[3]

## II. Relevant Procedural History

On December 6, 2007, the State of Florida charged Scott with first degree murder (count one), attempted armed robbery (count two), and possession of a firearm by a convicted felon (count three) in Duval County case number 16-2007-CF-014830-AXXX. <u>See</u> Doc. 22-1 at 59-60. The State also charged Scott with aggravated battery in Duval County case number 16-2009-CF-5424-AXXX on April 23, 2009. <u>See</u> <u>id.</u> at 264. The court consolidated the cases for trial, <u>see</u> <u>id.</u> at 716-17, and severed the charge of possession of a firearm by a convicted felon, <u>see</u> Doc. 22-2 at 16. On April 30, 2009, at the conclusion of a trial, the jury found Scott guilty of first degree murder, attempted armed robbery, and aggravated battery (count four). <u>See</u> Docs. 22-1 at 413-16, Verdicts; 22-2 at 1019-20. On July 23, 2009, the court sentenced Scott to death for count one, a term of imprisonment of twenty-five years with a twenty-five-year minimum mandatory term for count two, and a term of imprisonment of fifteen years with a ten-year minimum mandatory term for count four. <u>See</u> Doc.

---

[3] <u>See</u> Order (Doc. 21) ("If the petitioner fails to reply or file a notice, the Court will consider the case ripe, and all briefing will be closed.").

22-1 at 607-15, Judgment.[4] The court further ordered the sentences for counts two and four to run concurrently with the sentence on count one. See id.

Scott, with the benefit of counsel, appealed his first degree murder conviction and death sentence to the Florida Supreme Court. In doing so, he filed an initial brief, arguing that the trial court erred when it denied: his motion for mistrial based on the prosecutor's guilt-phase closing argument that shifted the burden of proof (ground one), see Doc. 22-3 at 36; his motion for mistrial based on a defense witness's cross-examination testimony that Scott had been incarcerated for an uncharged crime (ground two), see id. at 44; and his motion to suppress the audio recording of Scott's statements to co-defendant Desi Bolling (ground three), see id. at 52. He also asserted that his death sentence was not proportionate (ground four), see id. at 57, and that his death sentence and Florida's capital sentencing scheme are unconstitutional under Ring v. Arizona, 536 U.S. 584 (2002) (ground five), see Doc. 22-3 at 63. The State filed an answer brief, see id. at 122, and Scott filed a reply brief, see id. at 190. On June 30, 2011, the Florida Supreme Court affirmed Scott's first degree murder conviction,[5] vacated the death sentence, remanded the case to

---

[4] The State nolle prossed the charge of possession of a firearm by a convicted felon (count three). See Doc. 22-1 at 765.

[5] Scott v. State, 66 So.3d 923, 929 n.5 (Fla. 2011) (per curiam) ("Moreover, because Scott does not challenge his attempted robbery and aggravated battery convictions, we do not address either conviction in this appeal.").

the circuit court for the imposition of a sentence of life imprisonment without the possibility of parole for the first degree murder. Scott v. State, 66 So.3d 923 (Fla. 2011) (per curiam); see Doc. 22-3 at 204. The court issued the mandate on July 21, 2011. Id. at 241. On remand, the circuit court resentenced Scott to a term of life imprisonment on August 25, 2011. See id. at 246. Scott did not appeal. See Doc. 22-4 at 66.

On January 23, 2012, Scott filed a pro se petition for writ of habeas corpus in the First District Court of Appeal (First DCA). See Doc. 22-3 at 254. The First DCA transferred the case to the Florida Supreme Court on February 15, 2012, see id. at 351, and Scott filed an amended petition on April 20, 2012, see id. at 450. In the amended petition, Scott asserted that appellate counsel was ineffective because he failed to argue the following issues on direct appeal: the trial court erroneously instructed the jury that second degree murder was a lesser-included offense of first degree murder (ground one), see id. at 453; the trial court failed to instruct the jury on any lesser-included offenses for attempted armed robbery (ground two), see id. at 456; and the evidence was insufficient to support the aggravated battery conviction (ground three), see id. at 458. He also asserted that appellate counsel was ineffective because he failed to argue that Scott's statements to co-defendant Bolling violated the Fifth Amendment (ground four). See id. at 460. The State responded, see id. at 497, and Scott filed a reply, see id. at 537. The Florida Supreme Court denied

the amended petition on September 11, 2013. See id. at 542 ("Having thoroughly reviewed the briefs and the record on appeal, we conclude that Scott has not demonstrated entitlement to habeas relief.").

On February 13, 2012, Scott filed a pro se motion for leave to exceed the page limit for postconviction relief. See id. at 548. The circuit court denied the motion on March 13, 2012. See id. at 552. He filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on May 7, 2012, see id. at 554, with supplements, and filed an amended motion on July 24, 2014, see id. at 592, with supplements, see id. at 667-69. In his amended Rule 3.850 motion, Scott asserted that his trial counsel was ineffective because he failed to: object when the trial court instructed the jury that second degree murder was a lesser-included offense (ground one), see id. at 596; object to the trial court's failure to instruct the jury on lesser-included offenses of attempted armed robbery (ground two), see id. at 598; file a motion to suppress regarding the audio recording of the jailhouse conversation between Scott and Bolling as a Fifth Amendment violation (ground three), see id. at 600; request a cautionary instruction concerning the jury's consideration of a transcript as an aid to a partially inaudible, unintelligible audio recording of Scott and Bolling (ground six), see id. at 609; impeach Lawrence Wright, a state witness (ground eight), see id. at 613; investigate and challenge the credibility of John Holsenbeck, a state witness (ground nine), see id. at 616; and argue that law

enforcement's issuance of the intelligence bulletin identifying Scott as Bolling's accomplice violated Scott's constitutional rights (ground eleven), see id. at 629. Additionally, he alleged that counsel was ineffective because he invited a prejudicial response from the prosecutor that shifted the burden of proof (ground four), see id. at 605, and filed a motion to dismiss the aggravated battery charge based on a speedy trial violation (ground five), see id. at 607. Scott also asserted that the trial court erred when it permitted Bolling to testify regarding his understanding of the recorded statements (ground seven), see id. at 611, and allowed the State to add the aggravated battery charge and consolidate it with the other charges for trial without giving Scott sufficient time to investigate and prepare a defense (ground ten), see id. at 619. As ground twelve, Scott alleged that the State committed a Brady[6] violation. See id. at 645.

On August 10, 2016, in a non-final, non-appealable order, the postconviction court denied grounds one, two, three, seven, and ten, and struck as facially insufficient grounds four, five, six, eight, nine, eleven, and twelve. See id. at 689. In doing so, the court granted Scott additional time to file a sworn and facially-sufficient motion, amending the stricken claims. See id. Scott requested more time, and, on October 31, 2016, the Court granted him

---

[6] Brady v. Maryland, 373 U.S. 83 (1963).

6

thirty days in which to do so. See id. at 547, 779. When Scott failed to amend his claims, the court denied Scott's request for postconviction relief in a final order on January 6, 2017. See id. at 774. On appeal, Scott filed a pro se brief, challenging the circuit court's denial of claims three, six, eight and nine, see Doc. 22-4 at 2, and the State filed a notice that it did not intend to file an answer brief, see id. at 16. On February 25, 2019, the First DCA affirmed the court's denial of postconviction relief per curiam, see id. at 44, and on March 25, 2019, the court issued the mandate, see id. at 47.[7]

Scott continued to challenge his convictions in the state courts after the filing of his federal Petition on March 19, 2019. He filed a pro se petition for writ of habeas corpus in the First DCA on May 28, 2019. See Doc. 22-4 at 79. In the petition, he asserted that a manifest injustice occurred when counsel failed to object to the court's inclusion of a lesser-included offense in the attempted armed robbery instruction. See id. at 84. The First DCA dismissed the petition as unauthorized on February 13, 2020. See id. at 112 (citing Baker v. State, 878 So. 2d 1236 (Fla. 2004) (holding that habeas corpus is not a means

---

[7] During the pendency of the postconviction proceeding, Scott filed a pro se motion to correct illegal sentence on June 11, 2017. See Doc. 22-4 at 49. The court denied the motion on June 29, 2017. See id. at 60. He also filed a notice to invoke discretionary jurisdiction and petition for writ of habeas corpus in the Florida Supreme Court. See id. at 18. On July 27, 2018, the Florida Supreme Court transferred the petition to the First DCA to be considered in the postconviction appeal. See id. at 40. The First DCA denied Scott's request for relief on August 22, 2018. See id. at 42.

to litigate issues that could have been or were raised in a direct appeal or postconviction motion)). He also filed a pro se motion for postconviction relief on November 10, 2020. See id. at 115. In the request for postconviction relief, he asserted that the State Attorney's Office failed to disclose favorable Brady evidence (ground one), see id. at 123, and the trial court erred when it permitted the State to add the aggravated battery charge and consolidate it with the other charges for trial without giving Scott sufficient time to prepare a defense, see id. at 132. On February 10, 2021, the circuit court denied the motion. See id. at 152. Scott did not appeal the circuit court's denial. See id. at 65.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834

8

F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Scott's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y,</u>

<u>Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98.

The Eleventh Circuit describes the limited scope of federal review pursuant to

§ 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

> conclusion in the first instance.'"[8] <u>Titlow</u>, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see</u> <u>Teasley v.</u>

<u>Warden, Macon State Prison</u>, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020).  Also,

deferential review under § 2254(d) generally is limited to the record that was

before the state court that adjudicated the claim on the merits.  <u>See</u> <u>Cullen v.</u>

<u>Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)

"requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. A district court's obligation is "to train its attention"

on the legal and factual basis for the state court's ruling, not to "flyspeck the

state court order or grade it." <u>Meders v. Warden, Ga. Diagnostic Prison</u>, 911

F.3d 1335, 1349 (11th Cir. 2019) (citing <u>Wilson</u>, 138 S. Ct. at 1191-92). Thus,

---

8 The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan
> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[9] supra, at 747-748, 111 S. Ct. 2546; Sykes,[10] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. 53, 60-61, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without

---

[9] Coleman v. Thompson, 501 U.S. 722 (1991).

[10] Wainwright v. Sykes, 433 U.S. 72 (1977).

14

> exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[11] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[11] Murray v. Carrier, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

17

court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Scott asserts that counsel (Assistant Public Defender Refik Werner Eler, Florida Bar #642126) was ineffective because he failed to file an adequate motion to suppress the audio recording of a conversation between Scott and co-defendant Bolling at the Duval County Jail. See Petition at 7-9. Scott raised this ineffectiveness claim in his amended Rule 3.850 motion (ground three). See Doc. 22-3 at 600-05. The postconviction court ultimately denied his request for postconviction relief with respect to the claim, stating in pertinent part:

> In ground three of his Motions, Defendant alleges ineffective assistance of counsel for failure to file an adequate motion to suppress. Specifically, Defendant contends that, with respect to the recording of the alleged jailhouse conversation between Defendant and co-defendant Desi Bolling, counsel moved to suppress the jailhouse statement on the basis of a Sixth Amendment violation. Defendant contends that counsel's motion was inadequate because counsel should have argued that the jailhouse statement violated Defendant's Fifth Amendment

rights. Defendant contends that, but for "[c]ounsel's failure to be diligent, thorough, and competent in preparing the motion to suppress, the proper legal argument would have adequately been raised and the outcome would have been the suppression of the illegally obtained statement, [or i]n the least it would have properly indicated for appellate review, the correct Constitutional Amendment violated if the trial court denied the motion."

A review of the record reflects that, in December of 2008, Defendant filed pro se motions to suppress in which Defendant sought the suppression of "all evidence flowing from the illegal device as fruits from the illegal electronic device." Specifically, Defendant sought suppression of the jailhouse recording and any evidence that flowed therefrom on the grounds that such violated his Fourth and Fourteenth Amendment protections against unreasonable seizures, his Fifth Amendment right to remain silent, and his Fifth and Sixth Amendment rights to counsel. (Ex. K, L).[12] On April 23, 2009, defense counsel filed a motion to suppress in which he argued, in part, that law enforcement failed to observe Defendant's constitutional rights when it utilized co-defendant Bolling as an agent of law enforcement to interrogate Defendant while he was in custody.[13] Although the specific constitutional amendment under which this "constitutional rights" argument falls was not specifically identified within counsel's motion, this Court notes that such an argument concerns Defendant's Fifth Amendment rights. As such, the record refutes Defendant's allegation in ground three that counsel failed to argue that the jailhouse statement violated Defendant's Fifth Amendment rights. Moreover, to the extent Defendant is alleging

---

[12] See Docs. 22-1 at 90, 97; 22-3 at 760.

[13] See Docs. 22-1 at 260; 22-3 at 763.

that counsel should have more "adequately" argued this as a basis for suppression, this Court notes that, under the circumstances of the case, such an argument was without merit. See Halm v. State, 958 So. 2d 392 (Fla. 2d DCA 2007) (explaining that a recorded jailhouse conversation between a defendant in custody on unrelated charges and a private citizen acting as an agent of law enforcement is not a custodial interrogation within the meaning of Miranda[14] and therefore does not violate the defendant's Fifth Amendment rights); see also State v. Russell, 814 So. 2d 483 (Fla. 5th DCA 2002).

Additionally, to any extent Defendant is alleging in ground three that the trial court erred when it denied suppression, the Court notes that such a claim of trial court error must be raised on appeal and is not cognizable in a rule 3.850 motion for post-conviction relief. See Swanson v. State, 984 So. 2d 629 (Fla. 1st DCA 2008). Similarly, to any extent Defendant is alleging that trial counsel failed to preserve an issue for appeal, the Court notes that the alleged "[f]ailure to preserve issues for appeal does not show the necessary prejudice under Strickland." Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009) (explaining that, in a rule 3.850 allegation of ineffective assistance of counsel, "[t]he prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal"). Moreover, as Defendant appears to reference in ground three what the Florida Supreme Court noted on appeal to be a waiver of the Fifth Amendment argument because it had not been sufficient[ly] pled on appeal,[15] this Court notes that, to any extent Defendant is attempting to raise an allegation of ineffective assistance of appellate counsel, such a claim is not cognizable in a rule 3.850 motion. See Fla.

---

[14] Miranda v. Arizona, 384 U.S. 436 (1966).

[15] Scott, 66 So. 3d at 932 n.6.

R. App. P. 9.141(d)(3) (providing that "[p]etitions alleging ineffective assistance of appellate counsel shall be filed in the court to which the appeal was taken").

For these reasons, Defendant warrants no relief on his allegations in ground three, and ground three of Defendant's Motions must be denied.

Doc. 22-3 at 673-75 (emphasis and footnotes omitted). The First DCA affirmed the postconviction court's denial of relief. See Doc. 22-4 at 44.

To the extent that the appellate court decided Scott's claim on the merits,[16] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Scott is not entitled to relief on the basis of this ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Scott's ineffectiveness claim is without merit because

---

[16] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

the record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The presumption that counsel's performance was reasonable is even stronger when, as in this case, counsel is an experienced criminal defense attorney.[17] The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, Scott must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the

---

[17] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." <u>Chandler v. United States</u>, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc); <u>see</u> <u>Franks v. GDCP Warden</u>, 975 F.3d 1165, 1176 n.1 (11th Cir. 2020); <u>Williams v. Head</u>, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney). Refik Werner Eler was admitted to the Florida Bar in 1987. <u>See</u> https://www.floridabar.org. Thus, at the time of Scott's 2009 criminal trial, Eler had been practicing criminal defense law for over twenty years.

standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

With respect to this claim, the Florida Supreme Court summarized the evidence presented at trial as follows:

> Following Scott's arrest, law enforcement arranged for Scott and Bolling to be housed in the same area at the jail. Bolling agreed to wear a wire and to record a conversation with Scott. Both Bolling and lead Detective Travis Oliver testified that they recognized the voice on the recording as belonging to Scott. The conversation was played at trial, but because much of the recording was inaudible, a prepared transcript was provided to the jury as an aid.
>
> In the recording, Bolling asked Scott about the night of the shooting. The ensuing conversation contained statements from Scott about the circumstances surrounding the attempted robbery and murder, including: (1) Scott's identification of three people in the coin laundry, one of whom was bending down by a machine; (2) Scott's explanation that an accomplice from Miami was behind him outside with an unloaded gun and was shaken by the events; (3) Scott's acknowledgement that he was masked; (4) Scott's claim to have hit one man in the head; and (5) Scott's claim that he shot another man after he told Scott to

24

> get out of the store and, in Scott's words, "grabbed a chair like he was going to hit" Scott.

Scott, 66 So. 3d at 927.

Scott filed a number of motions to suppress. First, Scott filed two pro se motions to suppress in December of 2008, see Doc. 22-1 at 90, 97, and later a counseled motion to suppress on April 23, 2009, see id. at 260. In the counseled motion, Scott sought "the suppression of and exclusion from introduction into evidence" at trial "any part of or all of the audio-recording of the conversation intercepted on October 2, 2007, at the Duval County Pre-trial Detention Facility between Desi Bolling and Kevin Scott, and any reference to that conversation or the substance thereof, or any reference to the fact that such a conversation was recorded." Id. at 261. After the prosecutor and defense counsel argued the suppression issue at a pretrial hearing on April 23, 2009, the court announced it would listen to the audio recording, read the transcript of the recording, and hear additional argument after jury selection. See id. at 718-23. Before jury selection, the court reminded counsel that it would address the motion after jury selection. See Doc. 22-2 at 8. After jury selection, see id. at 233, defense counsel argued for suppression based on the assertion that the tape was inaudible, and the transcript was unreliable, see id. at 235. The court explained in pertinent part:

> Well, I'm not going to permit the transcript to be introduced into evidence. I assume that the state will

> call Mr. Bolling and then will ask him did you have a
> conversation and was it recorded and, if so, have you
> listened to it and then hand it to him and have him
> identify it and then play it and we'll use the transcript
> as an aid to the jury and I'll give them the usual
> instruction that it is not evidence. It's not to be
> introduced in evidence and the best evidence of what
> was said is on the C.D. itself or whatever Mr. Bolling
> is saying and that's simply an aid to their memory. It's
> the way I would normally handle it unless Mr. de la
> Rionda [(the prosecutor)] has something else.

Id. at 235. Ultimately, the court denied the request for suppression at the pretrial hearing, see id. at 237, and a few days later entered a written order denying it "for reasons stated on the record," see Doc. 22-1 at 272. At trial, Bolling testified about his October 2, 2007 jailhouse conversation with Scott, see Doc. 22-2 at 440-535, and the court overruled defense counsel's renewed objections, see id. at 480. The court instructed the jury that the transcript of the recording was not evidence, but "only a guide" that would help the jury follow the audio recording. Id. at 481. The court also instructed the jurors that if they found any differences between the recording and the transcript, they "should rely on what is in the recording because the recording itself is the only thing that will be in evidence." Id. at 481, 493. After Bolling affirmed that his and Scott's voices were on the recording, see id. at 482, the jury heard the recording, see id. at 482-94.

On this record, Scott has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional

assistance. Even assuming arguendo deficient performance by defense counsel, Scott has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Scott claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Scott is not entitled to federal habeas relief on his ineffectiveness claim in ground one.

## B. Ground Two

Scott asserts that counsel was ineffective because he failed to request a jury instruction cautioning the jury about its reliance on the transcript of the recorded conversation between Scott and Bolling. See Petition at 11. He states that counsel should have requested "a modified version" of Florida's standard jury instruction 3.9, "Weighing the Evidence (Accomplices and Informants)." Id. at 12. He describes the recording as partially inaudible and unintelligible and suggests that the jurors may have relied on the transcript instead of the recording itself. See id. at 11. Respondents argue that Scott did not properly exhaust the claim in the state courts, and therefore the claim is procedurally barred. See Response at 39-43. This Court concludes that Scott did sufficiently exhaust the claim.

Scott raised the claim in his amended Rule 3.850 motion (ground six). See Doc. 22-3 at 609. The postconviction court struck the ground as facially

insufficient because Scott failed "to properly allege prejudice," and granted him leave to file in good faith a facially-sufficient claim "subject to all [the] requirements of rule 3.850." See id. at 678. When Scott failed to amend the claim, the court denied his request for postconviction relief as to the claim, stating in pertinent part:

> In ground six of his Motions, Defendant alleged ineffective assistance for failure to request any cautionary instruction concerning the use of a transcript as an aid alongside a partially inaudible, unintelligible recording. Specifically, Defendant contended that the "entire case was based upon an alleged recorded conversation between him and his codefendant inside the jailhouse," but that "[t]he recording was so messed up, that the State needed to try and transcribe the conversation as best as they possibly could [so t]he State made arrangements for defendant's co-defendant to help translate, so that a transcription could be made for [the] jury to use as an aid." Defendant contended that "counsel was ineffective for not requesting any type of cautionary instruction for [the] jury to consider, concerning transcripts used as an aid, alongside partially inaudible, unintelligible recorded conversation," and argued that, without a cautionary instruction against it, "the jurors may substitute the contents to the more accessible, printed dialogue for the sounds they cannot readily hear or distinguish on the tape and, in doing so, transform the transcript into independent evidence of the recorded statements."
>
> In its August 10, 2016, Order, this Court found ground six to be facially insufficient as raised, as Defendant failed to properly allege prejudice, and the Court granted Defendant an opportunity to amend this claim. To date, however, well after the expiration of the time period granted within which to amend,

28

> Defendant has filed nothing further to amend this claim. As such, summary denial of ground six is appropriate. See Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 2008)[18]; Fla. R. Crim. P. 3.850(f)(3).[19]

Id. at 781-82 (footnote and emphasis omitted). The First DCA affirmed the court's denial of postconviction relief per curiam.

To the extent that the appellate court decided the claim on the merits,[20] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Scott is not entitled to relief on the basis of this ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Scott's ineffectiveness claim is still without merit.

---

[18] See Oquendo, 2 So. 3d at 1004 ("Longstanding Florida caselaw requires that a postconviction movant describe with sufficient detail the factual support for a claim or the claim may be summarily denied.").

[19] See Fla. R. Crim. P. 3.850(f)(3) ("Any claim for which the insufficiency has not been cured within the time allowed for such amendment shall be summarily denied in an order that is a nonfinal, nonappealable order, which may be reviewed when a final, appealable order is entered.").

[20] See Wilson, 138 S. Ct. at 1192.

The record supports the postconviction court's conclusion. Notably, the circuit court instructed the jurors before providing each juror with a copy of the transcript, stating:

> Ladies and gentlemen, you're about -- an audio recording is about to be played for you. That recording is referred to as state's exhibit 32 in evidence and certain portions of the conversation on the tape have been redacted or excised because there's something not relevant to anything that has occurred in this case and you're not to concern yourself with the fact that certain portions ha[ve] been excised and you should devote your attention to the portion that is going to be played for you.
>
> I'm also going to permit the State of Florida to hand you what they have prepared as a transcript of that conversation. Now the transcript itself is not evidence in this case. It will not be presented into evidence in this case. It is only a guide for you to follow to help you follow the recording itself and if you note any difference between the recordings and the transcripts then, of course, you should rely on what is in the recording because the recording itself is the only thing that will be in evidence.

Doc. 22-2 at 480-81. At the charge conference, the following colloquy ensued.

> THE COURT: . . . . Don't read the use of transcripts because I've already read that to the jury. I assume no one is asking that the transcripts go back to the jury room, are they?
>
> [PROSECUTOR]: That is correct.
>
> [DEFENSE COUNSEL]: That's correct, Judge.
>
> THE COURT: Okay. Leave out use of transcripts or recordings then . . . .

Id. at 876-77. After closing arguments, the court instructed the jury: "It is to the evidence introduced in this trial and to it alone that you are to look for that proof." Id. at 987. The court also instructed the jury to use common sense in deciding "which is the best evidence" and "what evidence is reliable." Id. It is presumed that the jury reached its verdict solely on the evidence presented and followed the court's instructions. See United States v. Roy, 855 F.3d 1133, 1187 (11th Cir. 2017) ("We have obediently followed and repeated the Supreme Court's direction that we presume juries follow their instructions.") (citation omitted).

On this record, Scott has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Scott has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Scott claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Scott is not entitled to federal habeas relief on his ineffectiveness claim in ground two.

## C. Grounds Three and Four

As ground three, Scott asserts that counsel was ineffective because he failed to impeach Lawrence Wright, a state witness. See Petition at 13-15. According to Scott, Officer Terry's testimony supported Scott's "defense that he was not at or near the scene of the crime at the time it was committed." Id. at 14. As ground four, Scott asserts that counsel was ineffective because he failed to investigate John Holsenbeck, a state witness, and impeach him. See id. at 16-18. Respondents argue that Scott did not properly exhaust these claims in the state courts, and therefore the claims are procedurally barred. See Response at 45-49, 53-57. Upon consideration of the record, this Court concludes that Scott did sufficiently exhaust these claims. Therefore, the Court considers them on the merits.

Scott raised these two claims in his amended Rule 3.850 motion (grounds eight and nine). See Doc. 22-3 at 613, 616. The postconviction court struck the claims as facially insufficient because Scott failed "to properly allege prejudice," and granted him leave to file facially-sufficient claims. See id. at 680-82. When Scott failed to amend his claims, the court summarily denied his request for postconviction relief as to the claims. See id. at 782-85. The First DCA affirmed the court's denial of postconviction relief per curiam.

To the extent that the appellate court decided the claims on the merits,[21] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Scott is not entitled to relief on the basis of these ineffectiveness claims.

Nevertheless, even if the appellate court's adjudication of these claims is not entitled to deference, Scott's ineffectiveness claims are still without merit. The record supports the postconviction court's conclusion. On cross-examination, defense counsel challenged the credibility of both Wright and Holsenbeck.[22] Wright testified that he watched Scott change his shirt in a parking lot near the crime scene that night. See Doc. 22-2 at 565-67. Wright also testified about his motivation for sharing information with the police, see id. at 571-72, and affirmed that he had been previously convicted of a felony, see id. at 573. On cross-examination, Wright acknowledged his convicted-felon

---

[21] See Wilson, 138 S. Ct. at 1192.

[22] The Florida Supreme Court outlined the testimony of Wright and Holsenbeck. See Scott, 66 So. 3d at 926.

status. See id. at 574. Additionally, defense counsel asked questions related to Wright's account and his effort to secure a $20,000 reward promised by a local businessman. See id. at 577-85. Notably, defense counsel called Officer Terry, who testified about what he saw in the parking lot that night. See id. at 741. As Scott asserts, see Petition at 14, Officer Terry's testimony that he was not able to identify any of the individuals who were in the parking lot that night was helpful to Scott's defense. Additionally, on cross-examination of Holsenbeck, defense counsel elicited testimony that Holsenbeck saw a black male run by the apartment complex's swimming pool that night, but "did not get a quick enough good enough look at him . . . ." Id. at 548. Holsenbeck also stated that he "had a couple beers" that night, the person was thirty to fifty feet away as he ran by, and that Holsenbeck saw the individual for "[m]aybe a couple seconds." Id. at 549.

On this record, Scott has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Scott has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Scott asserts he should have. His ineffectiveness claims are without merit since he has shown neither deficient

performance nor resulting prejudice. Accordingly, Scott is not entitled to federal habeas relief on his ineffectiveness claims in grounds three and four.

## VII. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Scott seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Scott "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Scott appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of January, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

36

Jax-1 1/25
c:
Kevin Jerome Scott, FDOC #J39149
Counsel of Record